IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SWORDFISH FITNESS OF FRANKLIN, INC., d/b/a Burn Bootcamp Franklin, TN, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>MARKEL INSURANCE COMPANY, and TREY W. SINER, INC.<br><br>Defendants. | NO. 3:20-cv-00876<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE NEWBERN |

## MEMORANDUM

Pending before the Court are motions to dismiss filed by Defendants Markel Insurance Company and Trey W. Siner, Inc. (Doc. Nos. 20 and 26). Plaintiffs filed a consolidated response in opposition. (Doc. No. 30). Defendants each filed replies. (Doc. Nos. 32 and 34). Defendant Markel Insurance Company has filed two notices of supplemental authority. (Doc. Nos. 46 and 47).

For the reasons stated below, Defendants' motions will be GRANTED.

### I. BACKGROUND

Plaintiffs Swordfish Fitness of Franklin, Inc., Swordfish Fitness of Nolensville, Inc., and Swordfish Fitness of Spring Hill, Inc. (collectively "Swordfish") operate fitness centers in Tennessee under the business name Burn Bootcamp. Plaintiffs purchased commercial property insurance policies (the "Policies") from Defendant Markel Insurance Company ("Markel") through an insurance agent, Trey W. Siner, Inc. ("Siner"). (Doc. Nos. 14-1, 14-2, 14-3). This case arises out of Swordfish's claims under the policies for lost business income.

In March 2020, as part of efforts to mitigate the impact of COVID-19 and protect the public health, the city of Nashville and the state of Tennessee issued a series of orders designed to prevent the person-to-person spread of COVID-19 (the "COVID Orders").[1] The Governor of Tennessee ordered non-essential businesses, including gyms and fitness centers, to close to the public. (Doc. No. 14-5). Swordfish seeks insurance coverage under two policy provision that provide coverage for loss of business income – a provision specifically for "Business Income and Extra Expenses" and the "Civil Authority" provision.

The provision for Business Income and Extra Expenses provides in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must have been caused by direct physical loss of or damage to property at the premises that are described in the Declarations of the policy to which this endorsement is attached. The loss or damage must be caused by or result from a Covered Cause of Loss

The Policies further provide:

> **(c) Extended Business Income**
>
> If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:
>
> (i) begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and either "operations" are resumed or tenantability is restored; and
>
> (ii) ends on the earlier of:

---

[1] Plaintiffs attached three of these orders to the Complaint: Executive Order No. 14, Governor of Tennessee, March 12, 2020 (Doc. No. 14-4) (declaring a state of emergency due to COVID-19); Executive Order No. 17, Governor of Tennessee, March 22, 2020 (Doc. No. 14-5) (ordering gyms and fitness centers be closed to the public); Executive Order No. 22, Governor of Tennessee, March 30, 2020 (Doc. No. 14-6) (urging persons in Tennessee to stay at home as much as possible except when engaged in essential activities).

> i. The date you could restore your "operations" or restore tenant occupancy, with reasonable speed, to the level which would generate the business income amount or "rental value" that would have existed if no direct physical loss or damage had occurred; or
>
> ii. 90 consecutive days after the date determined in (c)(i) above.
>
> However, Extended Business income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.
>
> Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(Doc. No. 14-1, PageID# 774-76)[2].

The Civil Authority provision provides:

> When a Covered Cause of Loss causes damage to property other than the property at the described premises, we will pay for actual loss of Business Income you sustain and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (i) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (ii) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or action is taken to enable civil authority to have unimpeded access to the damaged property.

(Doc. No. 14-1, PageID# 775-76).

The Policies define "Covered Cause of Loss" as "direct physical loss unless the loss is excluded or limited in this policy." (*Id*. at PageID# 748). The Policies also contain an exclusion

---

[2] The relevant policy terms in the three policies are identical. For purposes of this motion, the Court cites to the policy issued to Swordfish Fitness of Franklin, Inc. (Doc. No. 14-1).

3

for "loss due to virus of bacteria," which states, "We will not pay for loss or damage caused by or resulting from any virus, bacterium, or other micro-organism that induces or is capable of inducing physical distress, illness or disease." (*Id*. at PageID# 745). The virus exclusion states that it specifically applies to "endorsements that cover business income, extra expense, or actions of civil authority." (*Id*.).

On April 7, 2020, Markel sent Plaintiffs letters informing them that the claim for loss of business income was not covered under the policy because the closure due to COVID-19 "did not result in any direct physical loss of or damage to Covered Property," and the claim is excluded by the virus exclusion. The letter further advised that there is no coverage under the Civil Authority provision because the claim "does not establish any damage to property other than property at the described premises caused by a Covered Cause of Loss." (Doc. No. 31-2).[3]

Plaintiffs claim that Markel improperly denied coverage because Plaintiffs suffered "a direct physical loss of covered property due to Governor Bill Lee's Executive Orders which prohibited the Plaintiff's fitness centers from opening." (Doc. No. 31 at 8). They filed claims for declaratory judgment (Count I) and breach of the insurance policies (Count II). In the alternative, if the Court determines there is no coverage under the Policies, Plaintiffs bring claims against Markel and Siner for negligence (Count III) and breach of fiduciary duty (Count IV).[4]

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion

---

[3] For ease of reference, the Court cites the letter sent to Swordfish of Franklin (Doc. No. 31-2). Markel sent identical letters to Swordfish of Nolensville and Swordfish of Spring Hill. (Doc. Nos. 31-3, 31-4).

[4] The First Amended Complaint (Doc. No. 14) is the operative complaint in this action. All references to the "Complaint" are to the First Amended Complaint.

to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to Defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008). Here, the Court has considered the insurance policies and the COVID Orders, which are attached to the Complaint, and the denial letters, which are referenced in the Complaint and central to the claims.

### III. ANALYSIS

#### A. Policy Coverage

In a diversity action, the Court applies the choice of law rules of the forum state. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). "In Tennessee, absent a valid choice of law provision, the rights and obligations under an insurance policy are governed by the law of the state where the insurance policy was 'made and delivered.'" *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 485 n.1 (Tenn. Ct. App. 2006). The Complaint alleges the Policy was issued to Plaintiffs in Tennessee and the parties appear to agree Tennessee law applies. (*See* Compl., ¶ 7).

5

Under Tennessee law, "an insurance policy is a contract, and as such, [the court's] analysis must be grounded in principles of contract law." *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005). Thus, the terms of an insurance contract "should be given their plain and ordinary meaning." *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012). Where the language of the policy is clear and unambiguous, the court must give effect to that meaning. *Id*. The policy must be construed "as a whole in a reasonable and logical manner" and the language "should be examined in the context of the entire agreement." *Id.*

"Language in an insurance policy is ambiguous if it is susceptible of more than one reasonable interpretation." *Artist Bldg. Parters v. Auto-Owners Mut. Ins. Co*., 435 S.W.3d 202, 216 (Tenn. Ct. App. 2013) (citing *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). "Ambiguity in a contract is doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one." *Id*. (quoting *Mid-Century Ins. Co. v. Williams*, 174 S.W.3d 230, 240 (Tenn. Ct. App. 2005). "When a provision that purports to limit insurance is ambiguous, it must be construed against the insurance company and in favor of the insured." *Id*. (quoting *Gates v. State Auto Mut. Ins. Co*., 196 S.W.3d 761, 764 (Tenn. Ct. App. 2005)).

1. Business Income and Extra Expense Coverage

The policy provision for loss of business income requires "direct physical loss of or damage to property at the premises." (Doc. No. 14-1 at PageID# 744). The parties dispute whether Swordfish's loss of use of the properties is a "physical loss of ... property." Markel contends that the closure of Plaintiffs' businesses due to the COVID Orders does not constitute "physical loss of or damage to property."

6

The Sixth Circuit has recently considered a restaurant's claim for coverage under identical policy language. *Santo's Italian Café LLC v. Acuity Ins. Co.*, Case No. 21-3068, 2021 WL 4304607 (6th Cir. Sept. 16, 2021). The Court finds its analysis instructive:[5]

> Nothing unexpected arises from consulting dictionary definitions of the key disputed terms of this clause: "direct physical loss of" property. "Direct" means "[e]ffected or existing without intermediation or intervening agency; immediate." *Oxford English Dictionary Online* (3d ed. 2021). "Physical" means "natural; tangible, concrete." *Id.* "Loss" means "[p]erdition, ruin, destruction; the condition or fact of being 'lost,' destroyed, or ruined," or "being deprived of." *Id.* And "property" means "any residential or other building (with or without associated land) or separately owned part of such building (as an apartment, etc.)," as well as "[s]omething belonging to a thing; an appurtenance; an adjunct." *Id.*
>
> Whether one sticks with the terms themselves (a "direct physical loss of" property) or a thesaurus-rich paraphrase of them (an "immediate" "tangible" "deprivation" of property), the conclusion is the same. The policy does not cover this loss. The restaurant has not been tangibly destroyed, whether in part or in full. And the owner has not been tangibly or concretely deprived of any of it. It still owns the restaurant and everything inside the space. And it can still put every square foot of the premises to use, even if not for in-person dining use.

*Id.* at *3. The Court agrees with the Sixth Circuit that the ordinary meaning of the contract language, "physical loss of or damage to property," does not include loss of use absent tangible loss or damage.

Plaintiffs attempt to distinguish cases involving restaurants on grounds that restaurants were permitted to continue operating at some level, either with outside dining, take out, or delivery, while gyms and fitness centers were forced to close entirely. It is the case that gyms and fitness centers were restricted to a greater degree than restaurants. However, this has no impact on the

---

[5] *Santo's Italian Café* involves application of Ohio law to the Ohio-based insurance contract. The Ohio law regarding the construction of the terms of a contract is the same as that of Tennessee – the terms of the contract are construed in accordance with their conventional meaning. *Santo's*, 2021 WL 4304607, at * 1 (citing *Laboy v. Grange Indem. Ins. Co.*, 41 N.E.3d 1224, 1227 (Ohio 2015)); *Garrison*, 377 S.W.3d at 664.

application of the policy. The plain meaning of the Policy language does not encompass loss of use in whole or in part absent some physical, i.e., tangible, loss of or damage to the covered property.

This construction also harmonizes with the policy as a whole. This is particularly evident in the context of the Policy provision limiting business income coverage to the period during which the property is being "repaired, rebuilt, or replaced." (Doc. No. 14-1, PageID# 774-76). The provision plainly contemplates actual repair or replacement of physically damaged or lost property. To reopen its business, Swordfish had no need to repair, rebuild, or replace lost property; it needed the Governor to lift the closure order.

Plaintiffs also argue that some federal courts that have analyzed similar or identical policy language have reached the opposite conclusion. *See e.g., Studio 417 Inc., et al. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020). These cases, however, express the minority view. The vast majority of courts, including those applying Tennessee law, have concluded that policies requiring "physical loss of or damage to property" do not provide coverage for business losses due to COVID-19 closures. *See e.g.*, *Santo's Italian Café*, 2021 WL 4304607, at *6; *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021); *Creative Business, Inc. v. Covington Specialty Ins. Co.*, No. 2:20-cv-02452, 2021 WL 4191466 (W.D. Tenn. Sept. 9, 2021); *1210 McGavock St. Hospitality Partners, LLC v. Admiral Indemnity Co.*, 509 F. Supp. 3d 1032, 1042 (M.D. Tenn. 2021) ("plaintiff has certainly suffered economic loss, but it is unable to show that is has suffered 'direct physical loss of or damage to' the premises or property covered by the Policy"); *SFDG LLC v. The Cincinnati Ins. Co.*, No. 1:20-cv-237, 2021 WL 4057573, at *4 (E.D. Tenn. Aug. 31, 2021); *Goodwood Brewing, LLC v. United Fire Grp.*, No. 3:20-cv-306-RGJ, 2021 WL 2955913, at *6-7 (W.D. Ky. Jul. 14, 2021) (noting that the majority of courts to have considered

the question have concluded that "direct physical loss of or damage to" requires a tangible loss of or harm to the insured property); *Bluegrass Oral Health Ctr., PLLC v. Cincinnati Ins. Co.*, No. 1:20-cv-00120-GNS, 2021 WL 1069038, at *4 (W.D. Ky. Mar. 18, 2021); *Chelsea Ventures, LLC v. Cincinnati Ins. Co.*, No. 2:20-cv-13002-MAG-APP, 2021 WL 2529821, at *4 (E.D. Mich. Jun. 21, 2021) (collecting cases).

This Court agrees with the majority of federal courts that have construed identical or similar policy language that government ordered closures due to COVID-19 do not constitute "physical loss of or damage to property." Plaintiffs have not plausibly alleged physical loss of or damage to the covered property and, therefore, have failed to plausibly state a covered claim under the Policy.[6]

2. Civil Authority

The Civil Authority provision requires damage to property other than the covered property and that access to covered property is prohibited by action of civil authority taken as a result of the damage. (*See* Policy, Doc. No. 14-1 at Page ID# 775-76). Plaintiffs have not plausibly alleged damage to property or that the COVID Orders were taken as a result of the property damage.

Numerous courts have noted that a virus does cause physical damage to property and can be eliminated simply by cleaning and disinfecting surfaces. *See e.g., Dino Drop, Inc. v. Cincinnati*

---

[6] The Court notes that the policy also contains a virus exclusion, which many courts have found dispositive of the coverage issues. *See e.g.*, *1210 McGavock St. Hospitality Partners, LLC v Admiralty Indemnity Co.*, 509 F. Supp. 3d 1032 (M.D. Tenn. 2020) (finding the virus exclusion clause "clearly precludes coverage"); *Madison Square Cleaners v. State Farm Fire and Casualty Co.*, No. 2:21-cv-11273, 2021 WL 4239987, at * 4 (E.D. Mich. Sept. 17, 2021) (noting that "many federal courts have interpreted similar virus exclusions to embrace the COVID-19 global pandemic and the government mandated shutdowns"); *ABC Dental, PC v. AMCI Ins. Co.*, No. 3:21-cv-606, 2021 WL 3629399, at *2 (N.D. Ohio Jul. 13, 2021)(noting that courts have consistently rejected the argument that the losses were cause by government closure orders, not the virus). The Court need not consider the applicability of the exclusion because Plaintiffs have not established a covered loss under the policy. *See Blaine Const. Corp. v. Ins. Co. of N. Am.*, 171 F.3d 343, 349 (6th Cir. 1999) (applying Tennessee law) (claimant has the initial burden of proving it comes within the terms of the policy).

9

*Ins. Co.*, No. 20-12549, 2021 WL 2529817, *5 (E.D. Mich. Jun 21, 2021); *Brown Jug, Inc. v. Cincinnati Ins. Co.*, 2021 WL 2163604, at *4 (E.D. Mich. May 27, 2021); *Kitch v. Aspen Am. Ins. Co.*, No. 20-11930, 2020 WL 7338570, at *4 (E.D. Mich. Dec. 14, 2020) ("[l]ike other viruses, COVID-19 injures people but does not seem to cause any lasting damage to physical property").

Even if Plaintiffs could show physical damage, the COVID Orders were not issued as a result of property damage, but to control the spread of the virus by limiting human interaction, particularly in large gatherings. (*See* Doc. Nos. 14-4, 14-5, 14-6).

Accordingly, the Court finds that Plaintiffs have not stated a plausible claim for coverage under the Civil Authority provision.

**B. Negligence and Breach of Fiduciary Duty**

Plaintiffs claim that if they are not entitled to coverage under the Policies, Markel and its agent, Trey W. Siner, Inc., are liable on grounds that Siner negligently failed to explain to Plaintiffs the nature of the virus exclusions in Plaintiffs' policies and did not use reasonable care and diligence in ensuring Plaintiffs were aware of the virus exclusions in the policies. (Compl., ¶¶ 50-51). Plaintiffs also assert a breach of fiduciary duty claim against Markel and Siner for, among other things, failing to "provide adequate insurance advice, ascertain Plaintiff's [sic] risks of loss, and procure, provide and maintain adequate and appropriate insurance coverage for Plaintiff" including "insurance coverage for loss of business income related to foreseeable causes of loss including virus and pandemic." (Compl., ¶ 63).

1. <u>Fiduciary Duty</u>

Plaintiffs have not pled facts to allege plausibly the existence of a fiduciary duty owed to Plaintiffs by Siner or Markel. "Ordinarily the relationship between an insured and the agent that

10

sells the insurance is, without proof of more, an ordinary business relationship, not a fiduciary one." *Wright v. State Farm Fire & Cas. Co.*, 555 F. App'x 575, 580 (6th Cir. 2014).

Plaintiffs allege the existence of a fiduciary relationship "based on Defendant Siner's undertaking and assuming responsibility to obtain business owner insurance on the Properties." (Compl. ¶ 61). Although Plaintiffs included in the Complaint a separate section entitled "Special Relationship," they have not, in fact, alleged any facts showing a "special relationship." Plaintiffs allege that "the parties had a relationship as the Insurance Company, the Insurance Company's Agent, and Insured" and that Markel and Siner are "experts in insurance" and Plaintiffs are not. (Compl., ¶ 48).

Moreover, Plaintiffs have specifically alleged that Siner was Markel's agent. (Compl., ¶¶ 23-26, 56-57, 70-71); *see also*, Tenn. Code Ann. § 56-6-115(b) (providing that an "insurance producer who solicits or negotiates an application for insurance is regarded as the agent of the insurer and not the insured"). Indeed, the agency relationship between Siner and Markel is the purported basis for Markel's vicariously liability. Plaintiffs then asserts that an agent, including an insurance agent, owes a fiduciary duty to its principle. (Doc. No. 31 at 20 (citing *Watkins v. HRRW, LLC*, No. 3:05-cv-00279, 2006 WL 3327659, at *8 (M.D. Tenn. Nov. 14, 2006)).[7] The law does not preclude Siner acting as an agent for Plaintiffs, but in this case, Plaintiffs allege that Siner was Markel's agent. Accordingly, any fiduciary duty owed by Siner on the basis of an agency relationship would be to Markel, not Plaintiffs.

The Court finds that Plaintiffs have not alleged sufficient facts to establish a plausible claim for breach of fiduciary duty. Accordingly, this claim will be dismissed without prejudice.

---

[7] *Watkins* also recognized that Tennessee courts have "rejected breach of fiduciary duty claims against insurance agents in various factual circumstances". *Watkins*, 2006 WL 3327659.

2. Negligence

Plaintiff's negligence claim is based on Siner's alleged failure to "inform and explain to Plaintiffs the nature of the virus exclusions on Plaintiffs' policies, [and] use reasonable care and diligence in ensuring Plaintiff [sic] was aware of the virus exclusions applicable to Plaintiffs' policies." (Compl., ¶¶ 50-51).

Siner argues that Plaintiffs do not allege they requested coverage against a viral pandemic, and he was under no duty to explain the policy coverage or make sure Plaintiffs understood the policy. (Doc. No. 26-1 at 6 (citing *Weiss v. State Farm Fire & Cas. Co.*, 107 S.W.3d 503, 506 (Tenn. Ct. App. 2001)). He also argues that under Tennessee law, the payment of the insurance premium creates a rebuttable presumption that Plaintiffs accepted the coverage provided. (Doc. No. 26-1 (citing Tenn. Code Ann. § 56-7-135(b)).

Plaintiffs argue the rebuttable presumption that they accepted the coverage provided does not apply here because they are not bringing a claim for negligent failure to procure coverage. The Court agrees that Tenn. Code Ann. § 56-7-135(b) is not necessarily dispositive of the negligence claim, as it establishes only a rebuttable presumption that Plaintiffs accepted the coverage provided. Determination of whether Plaintiffs can rebut the presumption is not appropriate on a motion to dismiss.

Nevertheless, the Court agrees that Plaintiffs' negligence claim should be dismissed. Although the insurance agent has a duty to obtain the insurance asked for by the client, Plaintiffs do not allege they requested coverage that was not provided. *Weiss*, 107 S.W. at 506 (an insurance agent's obligation to a client ends when the agent obtains the insurance asked for by the client) (citing 16 Tenn. Juris. *Insurance* § 8 (2001)). Instead, Plaintiffs allege Siner failed to explain the

nature of the virus exclusions. *Weiss* makes clear that he did not have a duty to do so.[8] *See Weiss*, 107 S.W. at 506 (holding that insurance agents do not have a duty to explain the details of policy coverage or make sure insureds understand the policy coverage).

Moreover, Siner's alleged failure to explain the virus exclusion is not plausibly the cause of Plaintiffs' injury. As stated above, Plaintiffs are not entitled to coverage under the policy irrespective of the virus exclusion.

## IV. CONCLUSION

For the reasons stated, Defendants' motions to dismiss (Doc. Nos. 20 and 26) will be GRANTED. The claims for declaratory judgment and breach of the insurance policies will be DISMISSED WITH PREJUDICE. The claims for negligence and breach of fiduciary duty will be DISMISSED WITHOUT PREJUDICE.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[8] Plaintiffs attempt to distinguish *Weiss* by arguing that the plaintiff in *Weiss* was a third party to the contract is not supported by the decision. (Doc. No. 31 at 19 n.10). Weiss and her husband were both insureds under the contract. *See Weiss*, 107 S.W. at 504 ("[B]oth Mr. Weiss and Mrs. Weiss were named insured").

13